## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DARNELL PARHAM,

      Petitioner,                  CASE NO. 07-CV-10317

*v.*                                  DISTRICT JUDGE GEORGE CARAM STEEH
                                  MAGISTRATE JUDGE CHARLES E. BINDER

MILLICENT WARREN,
Warden, Thumb Correctional Facility,

      Respondent.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON PETITION FOR WRIT OF HABEAS CORPUS

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the Petition for Writ of

Habeas Corpus be **DENIED**.

## II.    REPORT

### A.    Introduction

Darnell Parham ("Petitioner"), who is presently confined at the Thumb Correctional Facility

in Lapeer, Michigan, proceeding through counsel, seeks the issuance of a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  In his application, Petitioner challenges his convictions for first-

degree murder, MICH. COMP. LAWS § 750.316(1)(a), under an aiding and abetting theory, and

possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b.  The

Petition was filed on January 19, 2007, a Response was filed on July 27, 2007 (Doc. 5), and a reply

was filed on September 27, 2007.  (Doc. 5.)  On December 30, 2008, the case was referred to the

undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b).  (Doc. 9.)  Complete Rule 5

materials were submitted on May 13, 2009.  (Doc. 13.)  Accordingly, the case is now ready for

Report and Recommendation.

### B.      Facts & Procedural History

Petitioner was convicted of first-degree murder and felony firearm after a jury trial in the

Wayne County Circuit Court.  (Pet., Doc. 1 ¶ 3.)  On January 12, 2001, Wayne County Circuit

Judge Robert J. Colombo, Jr., sentenced Petitioner to life without parole for the murder conviction

and a consecutive two-year term for the felony firearm conviction.  (*Id.* ¶ 4.)

The Michigan Court of Appeals' opinion sets forth the facts as follows:

> The prosecution alleged that on August 29, 1999, defendant aided companion
> Leo Kennedy[1] in the murder of Anthony "Tone" Mercer because of a neighborhood
> drug trade rivalry.  According to the prosecution, early that morning, defendant and
> Kennedy drove to a club in Detroit, intending to kill Mercer.  A witness testified that
> when Mercer emerged from the club, the parties argued and defendant threatened
> Mercer's life.  Then, the witness said, defendant handed Kennedy a gun, and
> Kennedy fatally shot Mercer four times in the chest and abdomen.  The defense
> contended that defendant was not the shooter and did not assist Kennedy in the
> murder.

> At trial, after obtaining both counsel's express consent, the trial court closed
> the courtroom to all persons except for defendant's and the victim's families.  The
> court stated that closing the trial was appropriate because some of the spectators had
> discussed the case in the presence of some jury members, and because the spectators
> seemed to be observing the trial merely for entertainment.  Defense counsel did not
> object.

> According to the record, the trial court gave the jury the proper instruction
> that aiding and abetting includes the element that 'before or during the crime, the
> defendant did something to assist in the commission of the crime.' CJI2d 8.1.[2]
> During trial deliberations, the jury asked the judge whether the phrase 'during the
> crime' included 'time after the shots were fired.'  After obtaining both counsel's
> express consent, the trial court reread the official instruction to the jury and told
> them that whether defendant's conduct after the shots were fired qualified as
> occurring 'during' the crime was a fact question for them to determine.  Defense
> counsel did not object to this instruction.

[1]Defendant and Kennedy were tried jointly with separate juries. Kennedy was also convicted of first-degree murder.

[2]MCL 767.39, the statute abolishing the distinction between an accessory and a principal, states:  'Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense, or *procures, counsels, aids, or abets* in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.' (emphasis added).

*People v. Parham*, No. 233205, 2002 WL 1897654, at *1 (Mich. Ct. App. Aug. 16, 2002).

Petitioner raised the following three issues on direct appeal:

I.      WHERE THE PROSECUTION'S THEORY WAS THAT DARNELL PARHAM WAS AN AIDER AND ABETTOR BUT NOT THE PRINCIPAL AND THE JURY ASKED DURING DELIBERATIONS ABOUT AIDING AND ABETTING, THE TRIAL JUDGE VIOLATED DARNELL PARHAM'S RIGHTS TO A PROPERLY INSTRUCTED JURY, DUE PROCESS, AND A FAIR TRIAL BY INCORRECTLY INSTRUCTING THAT THE JURY COULD CONSIDER PARHAM'S ACTIVITY AFTER SHOTS WERE FIRED IN DECIDING WHETHER HE WAS AN AIDER AND ABETTOR TO FIRST DEGREE PREMEDITATED MURDER.

II.     DEFENSE COUNSEL'S FAILURE TO OBJECT TO THE OVERLY BROAD INSTRUCTION ON AIDING AND ABETTING THAT ALLOWED THE JURY TO CONVICT DARNELL PARHAM ON THE SUBSTANTIVE CHARGES EVEN IF THEY THOUGHT HE WAS AN ACCESSORY AFTER THE FACT DEPRIVED PARHAM OF HIS CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL AND TO A FAIR TRIAL.

III.    WHERE DEFENDANT DARNELL PARHAM DID NOT PERSONALLY WAIVE HIS CONSTITUTIONAL AND STATUTORY RIGHTS TO A PUBLIC TRIAL, HIS CONVICTION MUST BE REVERSED BECAUSE THE TRIAL JUDGE COMMITTED A STRUCTURAL ERROR BY EXPELLING MEMBERS OF THE PUBLIC FROM THE TRIAL AND ONLY ALLOWING THE PARTICIPANTS AND THE FAMILY MEMBERS OF THE DECEASED AND THE DEFENDANTS TO REMAIN.

(*Id.* ¶ 6.)  On August 16, 2002, the Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion.  *People v. Parham*, No. 233205, 2002 WL 1897654 (Mich. Ct. App. Aug. 16, 2002).  On March 31, 2003, the Michigan Supreme Court denied leave to appeal.  *People v. Parham*, No. 122448, 468 Mich. 874, 659 N.W.2d 236 (2003) (Table).

Petitioner filed a motion for relief from judgment on March 22, 2004, with the Wayne County Circuit Court, asserting the following claims:

I.      DEFENDANT PARHAM WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE PROSECUTOR REPEATEDLY INTRODUCED EVIDENCE THAT WITNESSES WERE AFRAID AND CONCERNED ABOUT THEIR SAFETY AND THEIR FAMILY'S SAFETY, WHEN THERE WAS NO EVIDENCE THAT THEIR FEARS WERE CONNECTED TO DEFENDANT.

II.     DEFENDANT PARHAM WAS DENIED DUE PROCESS AND HIS RIGHT OF CONFRONTATION WHEN THE PROSECUTOR USED HEARSAY STATEMENTS OF WITNESSES TO CONVICT HIM.

III.    DEFENDANT PARHAM WAS DENIED DUE PROCESS AND EQUAL PROTECTION UNDER THE FEDERAL AND STATE CONSTITUTIONS WHEN AN ERRONEOUS JURY INSTRUCTION ALLOWED FOR A CONVICTION AS AN ACCOMPLICE ON A LESSER STANDARD OF PROOF THAN REQUIRED FOR THE PRINCIPAL ACTOR.

IV.    DEFENDANT PARHAM WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY FAILED TO OBJECT TO THE PROSECUTOR'S MISCONDUCT, THE ERRONEOUS JURY INSTRUCTIONS, AND FAILED TO INVESTIGATE AND PRODUCE EXCULPATORY EYEWITNESSES.

V.     DEFENDANT PARHAM HAS ESTABLISHED AN ENTITLEMENT TO RELIEF FROM JUDGMENT OF HIS CONVICTION AND SENTENCE BY DEMONSTRATING GOOD CAUSE FOR THE FAILURE TO RAISE HIS PRESENT CLAIMS ON DIRECT APPEAL OR IN A PRIOR MOTION AND ACTUAL PREJUDICE FROM THE ALLEGED IRREGULARITIES IN THIS CRIMINAL PROCESS.

(Doc. 1 ¶ 9.)  Petitioner's motion for relief from judgment was denied by Wayne County Circuit Judge Colombo on August 16, 2004.  (*Id.* ¶ 10.)  Leave for appeal from this order was denied by

4

the Michigan Court of Appeals "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)" on March 16, 2006, and by the Michigan Supreme Court on October 31, 2006, for the same reason and under the same court rule as the Michigan Court of Appeals, i.e., MCR 6.508(D). (*Id.* ¶¶ 11-12.)

Petitioner raises the following issues in his Petition for Writ of Habeas Corpus:

I.     PETITIONER WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT, IN RESPONSE TO A JURY QUESTION GAVE A LEGALLY ERRONEOUS INSTRUCTION ON AIDING AND ABETTING ALLOWING CONVICTION ON THE BASIS OF CONDUCT AFTER THE KILLING.

II.    PETITIONER WAS DEPRIVED OF HIS RIGHT TO A PUBLIC TRIAL WHEN THE TRIAL COURT EXPELLED THE PUBLIC FROM THE TRIAL.

III.   PETITIONER PARHAM WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE PROSECUTOR REPEATEDLY INTRODUCED EVIDENCE THAT WITNESSES WERE AFRAID AND CONCERNED ABOUT THEIR SAFETY AND THEIR FAMILY'S SAFETY, WHEN THERE WAS NO EVIDENCE THAT THEIR FEARS WERE CONNECTED TO PETITIONER.

IV.    PETITIONER PARHAM WAS DENIED DUE PROCESS AND HIS RIGHT OF CONFRONTATION WHEN THE PROSECUTION USED HEARSAY STATEMENTS OF WITNESSES TO CONVICT HIM.

V.     PETITIONER PARHAM WAS DENIED DUE PROCESS AND EQUAL PROTECTION UNDER THE FEDERAL AND STATE CONSTITUTIONS WHEN AN ERRONEOUS JURY INSTRUCTION ALLOWED FOR A CONVICTION AS AN ACCOMPLICE ON A LESSER STANDARD OF PROOF THAN REQUIRED FOR THE PRINCIPAL ACTOR.

VI.    PETITIONER PARHAM WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY FAILED TO OBJECT TO THE PROSECUTOR'S MISCONDUCT, THE ERRONEOUS JURY INSTRUCTIONS, AND FAILED TO INVESTIGATE AND PRODUCE EXCULPATORY EYEWITNESSES.

VII.   PETITIONER PARHAM ESTABLISHED CAUSE AND PREJUDICE FOR HIS FAILURE TO PRESENT CLAIMS IN THIS PETITION WHICH WERE NOT RAISED IN THE APPEAL OF RIGHT.

(*Id.* ¶ 17.)

Respondent argues that Petitioner waived the claims presented here as Grounds I and II because defense counsel assented to the jury instruction and to the court's decision to clear the courtroom. (Doc. 5 at 4-5.) Respondent also argues that Petitioner's remaining claims are procedurally defaulted because he failed to raise them in his appeal of right and because the Michigan Supreme Court denied leave for failure to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D). (Doc. 5 at 6-7.) Finally, Respondent contends that Petitioner cannot establish cause to excuse his default and that his claims lack merit. (Doc. 5 at 7-11.)

**C.     Law and Analysis**

**1.     AEDPA Standard**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), govern this case because Petitioner filed his habeas petition after the effective date of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997).

The AEDPA altered the standard of review that a federal court must use when reviewing applications for the writ of habeas corpus. *Felker v. Turpin*, 518 U.S. 651, 116 S. Ct. 2333, 2335, 135 L. Ed. 2d 827 (1996), *reh'g denied*, 518 U.S. 1047, 117 S. Ct. 25, 135 L. Ed. 2d 1119 (1996); *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112, 118 S. Ct. 1044, 140 L. Ed. 2d 109 (1998). The current standard of review provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), the Court held that a state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Id.* at 1519. Additionally, a state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or if the state court either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 1520. The reasonableness of the state court's opinion is judged by an objective rather than subjective standard. *Id.* at 1521-22. The state court decision, however, need not cite Supreme Court precedent, or even reflect awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam).

Errors in state procedure and evidentiary rulings do not rise to the level of constitutional claims warranting habeas relief unless the error "'renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment'" or "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Broom v. Mitchell*, 441 F.3d 392, 405 (6th Cir. 2006) (internal citations omitted). Pursuant to the AEDPA, this Court must presume that state court factual determinations are

7

correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998); *see also* 28 U.S.C. § 2254(e)(1).

### 2.    Exhaustion

The AEDPA provides that federal courts "cannot grant a writ of habeas corpus to a prisoner held in state custody unless '(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.'" *D'Ambrosio v. Bagley*, 527 F.3d 489, 495 (6th Cir. 2008) (quoting 28 U.S.C. § 2254(b)(1)). The "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3).

Federal courts lack jurisdiction to consider claims in a habeas petition that were not "fairly presented" to the state courts. *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987). To "fairly present" a federal claim in the state court, a petitioner must plead both factual and legal bases for the claim. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). "The court has noted actions a defendant [now petitioner] can take which are significant to the determination whether a claim has been 'fairly presented': (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *McMeans*, 228 F.3d at 681. Meeting this standard does not require recitation of "chapter and verse" of constitutional law, but rather requires only "adequately appris[ing] the state courts of the constitutional theory

8

to be relied upon at appellate review." *Franklin*, 811 F. 2d at 326; *see also Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (petitioners need not "cite book and verse on the federal constitution" to satisfy the exhaustion requirement).

Respondent does not indicate whether she concedes exhaustion or not. I note that Petitioner has brought the first ground in the instant case before the Michigan Court of Appeals and the Michigan Supreme Court in a direct appeal as well as in his motion for relief from judgment. Petitioner has argued the second ground before the Michigan Court of Appeals and the Michigan Supreme Court in his direct appeal but not in his motion for relief from judgment. Petitioner brought the third, fourth, fifth and most of the sixth ground (except the erroneous jury instruction portion) before the Michigan Court of Appeals and the Michigan Supreme Court in his motion for relief from judgment. Finally, Petitioner argued cause and prejudice for failure to present claims in his motion for relief from judgment as well as in the instant case. Therefore, I suggest that Petitioner has sufficiently exhausted his remedies. I next turn to the question of procedural default.

### 3.    Procedural Default

Respondent argues that Petitioner waived Grounds I and II by his counsel's assent to the conduct and that Grounds III through VI[1] are procedurally defaulted because he failed to raise them in his appeal of right and because the Michigan Supreme Court denied leave for failure to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D). (Doc. 5 at 6-7.) I note, at the outset, that Petitioner did raise a claim that his counsel was constitutionally ineffective because he failed to object to the erroneous jury instruction in his direct appeal as well as in his motion for relief from judgment; thus, that portion of Petitioner's Ground VI is not procedurally defaulted.

---

[1]Petitioner's Ground VII is actually an assertion that he has met the cause and prejudice requirements to avoid procedural default.

The following discussion pertains to the remainder of Ground VI, and Grounds I, II, III, IV and V.

> The Sixth Circuit has explained that
>
> [w]hen a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review.

*Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000) (*quoted with approval in Broom*, 441 F.3d at 401).  In addition, procedural default occurs where a petitioner fails to comply with a state procedural rule that required him to have done something at trial to preserve an issue, e.g., make a contemporaneous objection or file a motion for directed verdict.  *United States v. Frady*, 456 U.S. 152, 167-69, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).  Procedural default "may be avoided 'only by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case.'"  *Broom*, 441 F.3d at 401 (citations omitted).

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).  The Sixth Circuit has set forth a four-part test for determining whether a prisoner's claim is procedurally defaulted and therefore barred from habeas review.  *Cooey v. Coyle*, 289 F.3d 882, 897 (6th Cir. 2002); *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).

The first step of the procedural default analysis is to determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. *Maupin*, 785 F.2d at 138. Second, the court must determine whether the procedural sanction was actually enforced by the state courts – that is, whether the state courts actually based their decision on the procedural rule. *Id.* "In determining whether state courts have relied on a procedural rule to bar review of a claim, we look to the last reasoned opinion of the state courts . . . ." *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003). Third, the federal court must consider whether the procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. The fourth prong provides that, if the above three factors are met, the Court may still excuse the default and address the merits of the claim if the petitioner can demonstrate that there was cause for him to not follow the state's procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.*

Cause exists if there is an "objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 752. It is the Petitioner's burden to demonstrate both cause and prejudice. *Simpson*, 238 F.3d at 408. Alternatively, courts may excuse a procedural default if there is a fundamental miscarriage of justice such as a "constitutional violation [that] has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

"[I]neffective assistance of counsel can constitute 'cause,' so long as that ineffective assistance of counsel claim itself is not procedurally defaulted." *Haliym v. Mitchell*, 492 F.3d 680, 691 (6th Cir. 2007). In other words, an ineffective assistance of counsel claim must be presented

11

"to the state courts as 'an independent claim before it may be used to establish cause for a procedural default . . . .'" *Scuba v. Brigano*, 527 F.3d 479, 487 (6th Cir. 2007). "Where ineffective assistance at sentencing is asserted, prejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 Fed. App'x 520, 525 (6th Cir. 2007).

> Although we have not identified with precision exactly what constitutes 'cause' to excuse procedural default, we have acknowledged that in certain circumstances counsel's ineffectiveness in failing to preserve the claim for review in state court will suffice. Not just any deficiency in counsel's performance will do, however, the assistance must have been so ineffective as to violate the Federal Constitution. In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is *itself* an independent constitutional claim.

*Edwards v. Carpenter*, 529 U.S. 446, 451-52, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000). Therefore, I will first turn to the ineffective assistance claim.

### a.     Waiver as Procedural Default of Grounds I and II

As mentioned, Respondent argues that Petitioner waived the claims presented here as Grounds I and II because defense counsel assented to the jury instruction and to the court's decision to clear the courtroom. (Doc. 5 at 4-5.) This failure to object coupled with an affirmative assent to the conduct could be considered procedural default if relied upon by the Michigan courts. *Frady, supra*. When considering both these grounds, the Michigan Court of Appeals stated, "because defense counsel expressly assented to the instruction, defendant waived this issue, extinguishing any possible error." (Doc. 8, Ex. 10 at 2 and 3.) The Michigan Supreme Court then denied relief because Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (Doc. 8 at Ex. 13.) Although denial of relief in a one sentence opinion under MCR 6.508 may not appear to be a "reasoned" opinion, the Sixth Circuit has held that a

Michigan appellate court's "summary invocation of MCR 6.508(D) made clear that the state courts' decision to deny relief rested exclusively on a state procedural rule." *Spencer v. Booker*, 254 Fed. App'x 520, 524 (6th Cir. 2007).[2]

I suggest that the Michigan courts relied on the procedural bar that counsel waived review of the issues by assenting to the conduct, thus Petitioner's claims raised in Grounds I and II are procedurally defaulted. *See Maupin, supra*; *Johnson v. Sherry*, No. 2:06-CV-11214, 2008 WL 373345, at *7 (E.D. Mich. Feb. 12, 2008) (finding public trial claim procedurally defaulted where defense counsel consented to the closure and Michigan Court of Appeals deemed the claim waived).

### b.    Ground VI, Substantively and as Cause for Procedural Default

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim.  First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense – not what bears a false label of 'strategy' – based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez*

---

[2] The *Spencer* court agreed with Sixth Circuit's decision in *McCray v. Metrish*, 232 Fed. App'x 469 (6th Cir. 2007), which declined to follow *Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004) (holding that it was not clear that summary order relied on a procedural bar as opposed to the non-procedural rule that petitioner failed to meet his burden of establishing entitlement to the relief requested thus finding that a denial of relief under MCR 6.508(D) did not establish procedural default). *Abela* departed from precedent such as *Luberda v. Trippett*, 211 F.3d 1004, 1006 (6th Cir. 2000) (summary invocation of MCR 6.508(D) established exclusive reliance on a procedural rule thus finding procedural default). The court in *McCray*, followed by the court in *Spencer*, relied on the fact that "absent *en banc* consideration to overrule a published opinion of the circuit, the *Abela* court could not have overruled *Luberda* and its progeny." *Spencer*, 254 Fed. App'x at 524.

*v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007).  Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688.  It is not enough to show that the alleged error "had some conceivable affect on the outcome of the proceeding."  *Id.*  Rather, the movant must show that, but for counsel's errors, the result would have been favorably different.  *Id.* at 693.  Failure to make the required showing under either prong of the *Strickland* test defeats the claim.  *Id.* at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986).  This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process.

In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993), the Court clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (citations omitted).

Here, although defense counsel may have acquiesced in conduct complained of on appeal and in this petition, a review of the record reveals that defense counsel actively cross-examined prosecution witnesses and zealously argued to the jury on behalf of Petitioner.  Therefore, I suggest that counsel's performance was not deficient and that Petitioner was not deprived of a fair trial.

Therefore, I suggest that ground VI cannot support habeas relief nor can it provide cause to excuse procedural default.

### c.      Procedural Default of Grounds III through VI

Grounds III through VI, except the ineffective assistance claim regarding the aiding and abetting jury instruction, were not raised in direct appeal but were first raised in the motion for relief from judgment and the Michigan Court of Appeals denied leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (Doc. 8 at Ex. 12.)  The Michigan Supreme Court's denial mimicked that of the appellate court.  (Doc. 8 at Ex. 13.)

Even where, as here, it is arguable that the state courts did not address these remaining claims, procedural default may be found.  "Regardless of what the state postconviction trial court did or did not do . . . [t]he Michigan appellate courts' one-sentence orders – stating that [petitioner] 'failed to meet the burden of establishing entitlement to relief under MCR 6.508(D) – therefore constitute orders 'based on an independent and adequate state procedural rule.'" *Ivory v. Jackson*, 509 F.3d 284, 293 (6th Cir. 2007) (citations omitted).[3]  Petitioner would be precluded from further filing any motions for relief from judgment in the state court under M.C.R. 6.502(G)'s prohibition against successive claims.  I therefore suggest that Petitioner's claims are procedurally defaulted such that federal habeas review is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

---

[3]The court in *Ivory* distinguished *Abela* because the "last reasoned state-court opinion issued in *Abela*, in contrast, explicitly denied relief on the merits, stating that the petitioner's motion was 'DENIED for lack of merit in the grounds presented.'" *Ivory*, 509 F.3d at 292.

Since one of Petitioner's procedurally defaulted claims is ineffective assistance of counsel, he likely cannot rely on ineffective assistance to establish "cause," *see Haliym* and *Scuba, supra*; *West v. Jones*, No. 06-CV-12057, 2008 WL 1902063, at *11 (E.D. Mich. Apr. 29, 2008) (habeas claims procedurally defaulted and ineffective assistance could not provide cause where ineffective assistance ground raised for the first time in motion for relief from judgment at the appellate rather than trial court level). As indicated earlier in this Report, I suggest that Petitioner cannot establish ineffective assistance of counsel on this record and thus, that ineffective assistance could not provide cause for the procedural default. I therefore suggest that Petitioner's claims are procedurally defaulted.

### 4.      Substantive Claims

Although the Petition could be denied on the procedural default ground alone, I will consider the merits of his claims because I suggest that, even if the merits are considered, Petitioner cannot show any meritorious grounds for habeas relief nor can he show that a fundamental miscarriage of justice occurred.

### a.      Jury Instructions on Aiding and Abetting - Grounds I and V

### i.      Governing Standards

"The nature of the particular instruction given is a matter of state law, and we are not at liberty to grant a writ of habeas corpus simply because we find the state's decision was incorrect under state law." *Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2003); *Gilmore v. Taylor*, 508 U.S. 333, 342, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993) ("we have held that instructions that contain errors of state law may not form the basis for federal habeas relief."). Federal courts "may grant the writ based on errors in state jury instructions only in extraordinary cases" where "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

process,' not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" *Daniels v. Lafler*, 501 F.3d 735, 740 (6th Cir. 2007) (citations omitted).

"In a criminal trial in this country, it is an elementary principle of due process that every element of the crime must be proven beyond a reasonable doubt." *Caldwell v. Bell*, 288 F.3d 838, 841 (6th Cir. 2002) (citing *Sandstrom v. Montana*, 442 U.S. 510, 520, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). For this reason, an instruction that a jury should presume malice from use of a deadly weapon fails under due process scrutiny. *Yates v. Evatt*, 500 U.S. 391, 401-02, 111 S. Ct. 1884, 114 L. Ed. 2d 432 (1991); *Houston v. Dutton*, 50 F.3d 381, 385 (6th Cir. 1995) (due process violated by instruction that stated "use of a weapon by the party killing . . . raises a presumption of malice sufficient to sustain a charge of Second Degree Murder"); *Caldwell, supra* (due process violated where instruction stated, "[w]hen the defendant is shown to have used a deadly weapon, and death is clearly shown to have resulted from its use, it is a presumption of law that the killing was done maliciously, that is, with the malice necessary to support a conviction of murder in the second degree").

### ii.     The Instructions Given and Petitioner's Argument

Petitioner contends that the erroneous instruction on aiding and abetting allowed a conviction on first-degree premeditated murder if the aider and abettor knew of the principal's intent even though Michigan law requires "actual intent to kill with premeditation and deliberation, and nothing less." (Doc. 1 at 76.) Petitioner further argues that, "[s]ince intent is a higher state of mind than mere knowledge when it comes to proofs, the trial court allowed for a conviction of Petitioner as an accomplice on a lesser standard of proof than the principal." (*Id.* (emphasis in original).) Petitioner also argues that the jury instruction impermissibly implied that he could be convicted even where his assistance occurred only after the shooting.

17

The following jury instruction was given:

In this case, the Defendant is charged with committing first degree premeditated murder or intentionally assisting someone else in committing it.  Anyone who intentionally assists someone else in committing a crime is as guilty as the person who directly commits it and can be convicted of that crime as an aider and abettor. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:  First, that the alleged crime was actually committed either by the Defendant or someone else.  It does not matter whether anyone else has been convicted of the crime.  Second, that before or during the crime, the Defendant did something to assist in the commission of the crime.  Third, the Defendant must have intended the commission of the crime alleged or must have known that the other person intended its commission at the time of giving the assistance.

It does not matter how much help, advice, or encouragement the Defendant gave. However, you must decide whether the Defendant intended to help another commit the crime and whether his help, advice, or encouragement actually did help, advise, or encourage the crime.

Even if the Defendant knew that the alleged crime was planned or was being committed, the mere fact that he was present when it was committed, it is not enough to prove that he assisted in committing it.

(Doc. 1 at 26-27; Doc. 13-2 at 48-49.)[4]  After deliberating for a couple of hours, the jury sent a note inquiring about the requirements for the murder count and aiding and abetting; the trial court gave the same standard instructions as previously given.  (Doc. 1 at 31, Doc. 13-3 at 19-21.)  After another approximate hour of deliberation, the jury sent another note which asked, "Does aid and abet apply to second degree or only first degree murder?"  (Doc. 13-3 at 29.)  After consulting with counsel, the trial judge sent a note which stated, "Aiding and abetting applies to second degree and first degree premeditated murder."  (Doc. 13-3 at 30.)  Approximately twenty minutes later, the jury sent another note which stated, "question concern aid and abet, 'duration of the crime,' does

---

[4]I note that the citations to Volume IV in the briefs will reflect different page numbers than those used in this Report.  The trial in the instant case involved co-defendants Kennedy and Parham and the original Volume IV filed with the Rule 5 materials contained a redacted Volume IV which included portions pertaining to the Kennedy jury but omitted portions relating to the Parham jury.  The entire Volume IV transcript was filed on May 13, 2009, and can be found at Docket 13.  The page numbers used in this Report correspond to the full and complete Volume IV filed at Docket 13.

this duration include the time after shots are fired?" (Doc. 13-3 at 31.) The trial judge indicated that he was "going to tell them, as I said, you're going to have to decide if activity that you are apparently considering after the shots were fired were during the crime, that's for you to decide." (Doc. 13-3 at 32.) Defense counsel stated "That's fair." (*Id.*) When the jury returned, the judge stated:

> I infer from your note that you picked up on the second element of aiding and abetting, which I'm going to read to you again. It says, second, that before or during the crime the Defendant did something to assist in the commission of the crime.
>
> It's for you to decide whatever you're considering after the shots were fired if that was during the crime. That's a determination you have to make. I can't tell you that. That's a factual determination. So you're gonna have to decide about whatever activity that you're considering after the shots were fired whether they constitute during the crime.

(Doc. 13-3 at 35.)

### iii.    Aiding and Abetting Etiology

The theory of holding an aider and abettor responsible for the crime committed by the principal he aids, abets, assists, induces or procures is well entrenched in the law. The Michigan Legislature abolished the distinction between principals and accessories-before-the-fact in 1915, concluding that "[h]e who aids and abets is now a principal." MICH. COMP. LAWS § 15737 (1915) (cited in *People v. McKeighan*, 205 Mich. 367, 370, 171 N.W. 500, 501 (1919)). In 1929, Michigan amended the statute to elaborate, "[e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." MICH. COMP. LAWS § 17253 (quoted in *People v. Smith*, 271 Mich. 553, 557, 260 N. W. 911, 913 (1935)).[5]

---

[5]Subsequent amendments included codification at MICH. COMP. LAWS § 767.39 (1954).

As to the intent element, it has long been held that to convict an aider and abettor of the principal offense, he must possess the same criminal intent as the principal. Justice Learned Hand described that, to aid and abet, a defendant must "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed. All the words used – even the most colorless, 'abet' – carry an implication of purposive attitude towards it." *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938).

Federal courts[6] and many state courts alike require that the aider and abettor possess the same criminal intent as the principal to be convicted. *See, e.g., United States v. Percel*, 553 F.3d 903, 911 (5th Cir. Dec. 23, 2008); *United States v. Santana*, 524 F.3d 851, 854 (8th Cir. 2008); *United States v. Lesure*, 262 Fed. App'x 135, 141-42 (11th Cir. 2008); *United States v. Granger*, 250 Fed. App'x 576, 577 (4th Cir. 2007); *United States v. Gardner*, 488 F.3d 700, 714 (6th Cir. 2007); *United States v. Matos-Quinones*, 453 F.3d 14, 20 (1st Cir. 2006); *State v. Whittaker,* 402 N.J. Super. 495, 516, 955 A.2d 322, 335 (2008); *State v. Brunelle,* 958 A.2d 657, 664 (Vt. 2008); *State v. Johnson*, 93 Ohio St. 3d 240, 244, 754 N. E.2d 796 (2001).

However, Michigan's standard criminal jury instruction on aiding and abetting does not require that the aider and abettor possess the same intent as the principal. Instead, the instruction states that "the defendant must have intended the commission of the crime *or must have known that the other person intended its commission at the time of giving the assistance.*" CJI2d 8.1

---

[6]The federal criminal jury instruction on aiding abetting reads, in pertinent part:

(2) But for you to find ___ guilty of ____ as an aider and abettor, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:
    (A) First, that the crime of ___ was committed.
    (B) Second, that the defendant helped to commit the crime [or encouraged someone else to commit the crime].
    (C) And third, that the defendant intended to help commit [or encourage] the crime.

Sixth Circuit Pattern Criminal Jury Instruction 4.01.

(emphasis supplied).  Although Michigan case law initially required that the aider and abettor possess the same intent as the principal, *see, e.g., People v. Harper*, 365 Mich. 494, 507-08, 113 N.W.2d 808, 814-15 (1962), soon after it was created, the Michigan Court of Appeals altered the intent requirement in *People v. Poplar*, 20 Mich. App. 132, 136, 173 N.W.2d 732, 734 (1970). The Court in *Poplar* held:

> Where a crime requires the existence of a specific intent, an alleged aider and abettor cannot be held as principal unless he himself possessed the required intent or unless he aided and abetted in the perpetration of the crime knowing that the actual perpetrator had the required intent . . . 'it is the knowledge of the wrongful purpose of the actor plus encouragement provided by the aider and abettor that makes the latter equally guilty.  Although the guilt of the aider and abettor is dependent upon the actor's crime, the criminal intent of the aider and abettor is presumed from his actions with knowledge of the actor's wrongful purpose.'

*Id.* (quoting *People v. Ellhamer*, 199 Cal. App. 2d 777, 782, 18 Cal. Rptr. 905, 908 (1962)).  The California case upon which the Michigan case rests was overruled in 1984 by the California Supreme Court.  *People v. Beeman*, 35 Cal. 3d 547, 199 Cal. Rptr. 60, 68, 674 P.2d 1318, 1326 (1984).[7]  The California Supreme Court resolved a conflict in the lower courts and held that the instruction allowing conviction for assistance given with knowledge of the principal's intent failed to "inform the jury that an aider and abettor must act with the intent or purpose of committing, encouraging, or facilitating the commission of the offense."  *Id.*  Nonetheless, Michigan adheres to the wording that California has since rejected.[8]

---

[7]California's instruction provided:

The persons concern in the commission of a crime who are regarded by law as principals in the crime thus committed . . . include . . . those who, with knowledge of the unlawful purpose of the person who directly commits the crime, aid and abet in its commission . . . .

A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages, or instigates by act or advice the commission of such crime.

[8]The Michigan Court of Appeals vacillated on the intent requirement.  At times, the court returned to the shared intent requirement, *see, e.g., People v. Brown*, 35 Mich. App. 330, 333, 192 N.W.2d 671, 672 (1971) (aiding

### iv.     Merits of Ground V

Petitioner challenges the jury instruction based on its failure to satisfy the intent element of first-degree premeditated murder premised on an aiding and abetting theory.  In order to properly analyze the interplay between the premeditated murder instruction and aiding and abetting, I will first examine the mental element of first-degree premeditated murder.

The seminal Michigan case on the requisite mental state for murder is *People v. Aaron*, 409 Mich. 672, 299 N.W.2d 304 (1980).  In *Aaron*, the Court recognized the three mental state elements that comprise malice aforethought, which elevates a killing to murder:  (1) intent to kill, (2) intent to do great bodily harm, and (3) wanton and wilful disregard that the natural tendency of the defendant's behavior is to cause death or great bodily harm.  *Id*. at 728 (holding that intent to commit a felony, of itself, does not constitute sufficient *mens rea* to establish murder; malice must be proven).  The court further noted that first-degree premeditated murder requires more than malice aforethought; it "requires proof of the specific intent to cause death."  *Id.* at 715 n.102.  In other words, malice aforethought encompasses the intent to kill but also allows conviction for the lesser mental states of intent to do great bodily harm and the wanton and wilful disregard mental state.

In a case challenging jury instructions where murder was charged under an aiding and abetting theory, the Michigan Supreme Court recognized that the third potential mental state for malice aforethought (wanton and wilful disregard) is the same mental state allowed after the disjunctive in the intent element for aiding and abetting, i.e., assistance given with knowledge that

_____

and abetting required a showing that "the parties had a common intent"), but appears to have settled on the current definition since *People v. Jackson*, 42 Mich. App. 391, 398, 202 N.W.2d 459, 462 (1972) (an aider and abettor can be held liable as a principal where he "himself possessed the required specific intent *or* [where] he aided and abetted another in the perpetration of that crime, knowing that the perpetrator had the required intent"); *but see, People v. Akerley*, 73 Mich. App. 321, 325-26, 251 N.W.2d 309, 311 (1977) ("To convict the defendant as an aider and abettor it must be proven that aider and principal shared a common intent or common purpose").

the principal intended to commit the crime.  In *People v. Kelly*, 423 Mich. 261, 278-79, 378 N.W.2d 365, 372 (1985), the court stated that *Aaron* requires that "the aider and abettor had the intent to kill, the intent to cause great bodily harm or wantonly and wilfully disregarded the likelihood of the natural tendency of his behavior to cause death or great bodily harm.  Further, if the aider and abettor participates in a crime with knowledge of his principal's intent to kill or to cause great bodily harm, he is acting with 'wanton and wilful disregard' sufficient to support a finding of malice under *Aaron*."  *Id.* (citing cases back to *People v. Poplar*, 20 Mich. App. 132, 136, 173 N.W.2d 732 (1969)).  In other words, someone who aids and abets a person who they know intends to kill another shares the requisite mental state of malice with the perpetrator.  *See Murphy v. Lecureux*, 831 F.2d 296, 1987 WL 38702 at *2-3 (Oct. 13, 1987) (unpublished) (no habeas relief for second degree murder conviction where sufficient evidence that petitioner, aider and abettor, "acted with the other co-defendants in wanton and wilful disregard that the natural tendency of his behavior was to cause death or great bodily harm.")

However, the mental state needed for first-degree premeditated murder is more narrowly drawn than malice – it requires the specific intent to cause death.  *Aaron*, 409 Mich. at 715 n.102; *accord People v. Morrin*, 31 Mich. App. 301, 323, 187 N.W.2d 434, 445 (1971).  Thus, the aiding and abetting mental state definition following the disjunctive (that he assisted, knowing the principal intended to commit the crime) is incompatible with the mental state needed to prove first degree premeditated murder.  I therefore suggest that failure to redact the aiding and abetting jury instruction to allow conviction only where the "defendant intended the commission of the crime alleged," i.e., intent to kill,  and failure to eliminate the "or must have known that the other person intended its commission at the time of giving the assistance," allowed conviction of Petitioner in

23

violation of the "elementary principle of due process that every element of the crime must be proven beyond a reasonable doubt." *Caldwell*, 288 F.3d at 841 (citing *Sandstrom*).

### v.    Merits of Ground I

Petitioner also argues that the jury instruction impermissibly implied that Petitioner could be convicted even where his assistance occurred only after the shooting. As mentioned, the jury sent a note which stated: "question concern aid and abet, 'duration of the crime,' does this duration include the time after shots are fired?" (Doc. 13-3 at 31.) The trial judge's response was quoted above. Petitioner adds that the instructional error was exacerbated because the prosecutor argued that, "after the killing was done, [petitioner] actively took actions to try to lead the police and everybody away from the truth." (Doc. 1 at 31.) The transcript reveals that, in its closing argument, the prosecution argued:

> Then you can take as consciousness and evidence of his guilt, the fact that he misdirects the investigation. He gives the police all this information trying to take him off his scent. He also, in his first statement, totally, totally, totally tries to take a motive away from him and put the motive on to somebody else. He talks about this person named Wheeze (ph), and there was beef with Wheeze and you should look at Wheeze. Wheeze really did the killing, things of that nature.

> But also in the first statement, he gives you some more information that leads you to the conclusion that he, in fact, was an active aider and abetter in this case. First of all, he says, well I don't know anything about a house being firebombed or a house on Edgewood being burned. We later find out that that's Tone's dope house. He later admits he burned Tone's dope house. But now he wants you to believe I would go as far as to burn my rival's dope house, but, no, I never would go try and shoot and kill him. Does that appeal to your common sense?

> Now, let's look at the second statement. And the second statement he gives to the police – oh, something else in the first statement that he indicates gives you – that indicates he knows Leo and Leo's intent. In the first statement he indicates he knows about the Lorcin 9 millimeter, the Lorcin 9 millimeter that turns out to be the murder weapon. And he says he knows it's the gun that Leo uses.

Then we go to the second statement he gives to the police. And these statements are given in October of '99. He's misdirecting the investigation. All these things are doing to take the attention away from him . . . .

Second statement. Basically he has the cops running all over, hither and yon, trying to investigate motives and people that have nothing to do with the killing. That shows you a consciousness of his guilt. That is circumstantial evidence that he is, in fact, guilty and he's trying to lead the police away.

But the most important statement showing evidence of premeditation and deliberation and aiding and abetting is the third statement. Starting off with the third statement. Leo came over to my house and told me let's go up to the club and watch over Deandre and Tederrian. At the point in time he goes up to the club, he knows that Teandre (sic) – excuse me, Deandre and Tederrian they're already up there going up there to kill Tone. So – and you talk about aiding and abetting, did he know before he went there the other participants' intent? Yeah.

Now, let's use common sense. These are his cousins. He has a bond with his cousins, plus Leo has a bond with his cousins through that tattoo Forever Real on the neck. He said, we were going over there to watch over them. You know, watch their back. What did he think was going to go when – happen when he went there when they were trying to kill him? What was he going to do? Just sit and watch? Use common sense.

(Doc. 13-1 at 3-6.)

Petitioner contends that the instructions given by the court in the instant case improperly allowed the jury to convict Petitioner without having to prove the necessary element that the assistance occurred before or during the crime. (Doc. 1 at 32-33.) Petitioner further argues that this confusion was exacerbated by the prosecution's reliance on misleading statements made by Petitioner after the shooting occurred to support its theory of Petitioner's guilt. (Doc. 13-1 at 3-6.)

This issue rests on the difference between aiding and abetting and being an accessory-after-the- fact. Michigan has a standard criminal jury instruction to differentiate between the two, but it was not given here.[9] Instead, the trial court gave the proper portion of the aiding and abetting

---

[9]It states:

(1) You must decide if the defendant is guilty of [ ] as an aider and abettor, or is guilty of being an accessory after the fact to the felony of [ ], or if [ ] is not guilty.

25

instruction relating to duration of the crime but then confused the matter by in essence telling the jury they had the ability to decide the legal question whether assistance after the shots were fired could be considered aiding and abetting.  Although it would have been acceptable for the trial judge to instruct that Petitioner's behavior when confronted by the police could be considered, as argued by the prosecution, as probative of his consciousness of guilt, it was not proper for the trial judge to indicate that actions taken after the shooting could be considered assistance before or during the commission of the crime.

I therefore suggest that the failure to clearly explain the legal requirement that an aider and abettor assist or encourage before or during the commission of the crime, rather than after, constituted error.

### vi.    Whether the Trial Court's Instructional Error Was Harmless

Finding error in the instructions, however, does not end the inquiry.  Erroneous instructions on aiding and abetting are not considered structural errors and have been held to be subject to harmless error review so long as the error does not vitiate all the jury's findings.  *California v. Roy*, 519 U.S. 2, 117 S. Ct. 337, 136 L. Ed. 2d 266 (1996); *Neder v. United States*, 527 U.S. 1, 11, 119

---

(2) If the prosecutor has proven beyond a reasonable doubt that before or during the [ ] the defendant gave [ ] encouragement or assistance intending to help another commit that crime, then you may find the defendant guilty of aiding and abetting the crime.

(3) If the prosecutor has proven beyond a reasonable doubt that defendant knew about [ ] and helped the person who committed it avoid discovery, arrest, trial or punishment after the crime ended, then you may find the defendant guilty of being an accessory after the fact.  The felony of [ ] ends when ____.

(4) If the prosecutor has not proven either of these charges beyond a reasonable doubt, your verdict must be not guilty.

Michigan CJI2d 8.7.  I note that this instruction implies that the aider and abettor possess the same intent as the principal.

26

S. Ct. 1827, 144 L. Ed. 2d 35 (1999).  "When faced with a *Sandstrom* error, a court . . . must review the entire case under the harmless-error standard . . . expounded in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), . . . which held that an error is not to be deemed harmless if it had a 'substantial or injurious effect or influence in determining the jury's verdict.'"  *Caldwell*, 288 F.3d at 842 (quoting *Brecht*, 507 U.S. at 622).

The confounding instructions given in the instant case could have substantially influenced a jury in a case where the evidence consisted solely or largely of assistance or encouragement given after the shooting.  However, in this case, I suggest that the record contains ample evidence of assistance given before and during the shooting, i.e., witness testimony that Petitioner drove the principal to the club for the purpose of shooting the victim and handed the principal the weapon used to shoot the victim.  Under these circumstances, I suggest that the instructions could not be considered to have had a substantial or injurious effect on the verdict.

b.      **Public Trial - Ground II**

Petitioner also contends that he was deprived of his right to a public trial when the trial court cleared the courtroom of all persons except the family of the victim and family of the defendants during the testimony of Petitioner's former girlfriend.  (Doc. 1 at 37.)  The Michigan appellate court noted that the right to a public trial is stated in the Sixth Amendment of the United States Constitution, but did not address the merits of this claim because defense counsel had consented to the partial closure of the courtroom to the public.  (Doc. 8, Ex. 10 at 3.)

The right to a public trial was created to further the aim that a criminal proceeding be fair by assuring that the judge and prosecutor carry out their duties responsibly, that the witnesses come forward, and that perjury is discouraged.  *Waller v. Georgia*, 467 U.S. 39, 46, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).  Closure does not violate the Sixth Amendment where:  (1) the party seeking

27

to close the courtroom advances an overriding interest that is likely to be prejudiced by an open courtroom; (2) the party seeking closure demonstrates that closure is no broader than necessary to protect that interest; (3) the trial court considers reasonable alternatives to closing the proceeding; and (4) the trial court makes findings adequate to support the closure.  *Id.* at 48.  Violation of the right to a public trial is considered structural error which is not subject to harmless error analysis. *Id.* at 49-50; *accord, Hereford v. Warren*, 536 F.3d 523, 528 (6th Cir. 2008) (noting structural errors include the right to a public trial, citing *Waller*).

Petitioner argues that the trial judge did not make adequate findings and that closure was not necessary.  (Doc. 1 at 39.)  Respondent counters that closure was "justified to preserve the fairness of the trial" because "[s]pectators were snickering at witnesses and commenting to jurors regarding the facts of the case," such that a failure to clear the courtroom may have led to a mistrial.  (Doc. 5 at 5.)  Petitioner concedes that the idea to close the courtroom came about as the result of an agreement between the prosecutor and defense counsel.  (Doc. 1 at 37.)

The closure here was not complete – family of both the victim and the defendant were permitted to stay.  The family members thus were be able to assure that the judge and prosecutor carried out their duties responsibly as required in *Waller*.  In addition, the interest protected by closure was a neutral one – both parties benefitted from removal of spectators who failed to recognize the seriousness of the proceedings.  Finally, there would appear to be no reasonable alternative that would have satisfied the parties' joint request to remove the uninterested spectators. Therefore, I suggest that no constitutional violation occurred under the instant facts.

### c.    Prosecutorial Misconduct - Ground III

"On habeas review, [t]he relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the conviction a denial of due process." *Bates v. Bell*,

402 F.3d 635, 640-41 (6th Cir. 2005) (quotations omitted).  Therefore, "to obtain relief, [Petitioner] must demonstrate that the prosecution's conduct was both improper and so flagrant as to warrant reversal."  *Id.*  Courts should "consider four factors 'in determining whether the challenged conduct is flagrant:  (1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant.'"  *Thompkins v. Berghuis*, 547 F.3d 572, 588 (6th Cir. 2008) (quoting *Bates*).  "Claims of prosecutorial misconduct are reviewed deferentially on habeas review."  *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

Petitioner contends that the prosecution "created the illusion that Petitioner Parham had been threatening or intimidating witnesses . . . [s]ince this evidence was not connected to Petitioner, it was not relevant and it was extremely prejudicial . . . [and] deprived [Petitioner] of a fair trial."  (Doc. 1 at 41.)  Petitioner contends that because the prosecutor questioned witnesses regarding their concern for their safety and the safety of their families, but Petitioner's counsel failed to cross-examine them as his co-defendant's counsel did, the threatening behavior was wrongfully attributed to Petitioner.  (Doc. 1 at 48-50.)

Witness Dawon Grier testified that he had attempted to invoke his Fifth Amendment rights to avoid testifying in the state district court because he was concerned about his and his family's safety.  (Doc. 1 at 48.)  On cross-examination, Grier testified that Petitioner's co-defendant had not threatened him directly, but when asked whether Petitioner and his co-defendant had friends and whether he understood that threats were being made on Petitioner's and his co-defendant's behalf, Grier responded, "Kind of, I guess."  (Doc. 1 at 49, Vol. II at 86-87.)  When Grier was asked whether he understood that he put his life on the line by testifying, he responded, "I probably

have." (*Id.*, Vol. II at 87.)  When witness Michael Dixon was asked whether he had any concerns in testifying, he responded, "Yes, I do . . . About my safety," his son's and wife's safety, and his own life.  (Doc. 1 at 49; Vol. II at 93-95.)  The prosecution read part of a statement made by witness Sennie Yeager wherein she described how Petitioner held her captive, beat her, forced her to have sex with himself and his friends, and placed a gun in her mouth and pulled the trigger.  The prosecution then asked whether the reason Yeager did not come forward to testify was because of the abuse, and Yeager responded, "No.  I did not tell them that.  That is not my statement."  (Doc. 1 at 52; Vol. II at 173-74.)  Petitioner complains that the prosecution's closing argument misstated Yeager's testimony by saying that Yeager did not want to testify because she'd been threatened and then went on to name the other witnesses who were afraid to testify.  (*Id.*)

Since there was direct evidence given by Grier and Dixon that they were afraid to testify, I suggest that the prosecutor's statements and argument were not "improper" and thus could not be "so flagrant" as to warrant habeas relief.  I further suggest that they would not have mislead the jury, that they were not extensive, and that the strength of the evidence against Petitioner was strong.  Therefore, I suggest that this ground cannot justify habeas relief.  *See Dye v. Hofbauer*, 197 Fed. App'x 378, 384 (6th Cir. 2006) (cumulative allegations of prosecutorial misconduct, including allegation that prosecutor intimated that the petitioner had threatened a witness, did not render trial constitutionally unfair); *Mattox v. Davis*, 549 F. Supp. 2d 877, 922-23 (W.D. Mich. 2008) (finding no constitutional violation where prosecutor elicited testimony from witnesses that they were afraid to testify against the petitioner and where witness recanted earlier out-of-court statement that she feared for her own safety and the safety of her son); *Cotton v. McKee*, No. 07-10291-BC, 2008 WL 4647691, at *5 (E.D. Mich. Oct. 20, 2008) (denying habeas relief on ground that prosecutor improperly admitted evidence that the petitioner had threatened to kill a witness

30

because no clearly established Supreme Court law holds that due process rights are violated by admission of such evidence and because such evidence is admissible to prove consciousness of guilt).

####    d.    Hearsay Evidence and the Right of Confrontation - Ground IV

The admissibility of the statements under state law is of no consequence here since habeas review does not lie for errors of state law, only those errors that violate the United States Constitution. *Estelle*, 502 U.S. at 68. However, Petitioner also contends that the admission violated his rights under the Confrontation Clause of the Sixth Amendment, which requires that a criminal defendant be permitted "physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987). "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required:  unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Testimonial evidence includes prior testimony in any hearing and statements made during police interrogations. *Id.*

Petitioner asserts that prosecution witnesses denied making statements that the prosecution nonetheless read into the record. (Doc. 1 at 57.) Petitioner further contends that the cautionary instruction given by the trial court that the statements could only be considered for impeachment purposes did not cure the error because "a witness can only be impeached with a prior inconsistent statement that the witness <u>did, in fact, make</u>. A witness cannot be impeached with something they did not say." (*Id.* (emphasis in original).) However, the transcript excerpts contained in the Petitioner's brief reveal that witness Grier testified that he in fact told the police that Petitioner's co-defendant had a "mission" to "murder Tone" and that Petitioner had given his co-defendant that

mission.  (Doc. 1 at 63; Vol. II at 76.)  Witness Dixon could not recall what he said to the police, so the prosecution read parts of his statement and asked Dixon whether he recalled making the statements, to which Dixon replied he did not.  (Doc. 1 at 64, Vol. II at 100-09.)  Witnesses Tederrian Jones (Petitioner's cousin), Deandre Frazier, and Sennie Yeager denied previously giving incriminating statements against Petitioner and his co-defendant to the police; the prosecutor read portions of the statements and they continued to deny making the statements. (Doc. 1 at 66-69, Vol. II at 164-72, 193-207, Vol. III at 56-60.)

I initially suggest that a witness can be impeached by a statement alleged to have been made to the police when that witness testifies that he or she never made incriminating statements to the police.  However, even if impeachment were not proper under the Michigan rules of evidence, this state law violation would not be grounds for habeas relief.  *See Estelle, supra.*  I further suggest that since Petitioner had the opportunity to confront and cross-examine these witnesses in court, there can be no Confrontation Clause violation.  *See Ritchie, supra.*  I therefore suggest that this ground cannot support habeas relief.


### D.     Conclusion

For all the reasons stated above, I suggest that the Petition for habeas corpus be denied because the claims raised are procedurally defaulted, or alternatively, lack merit or consist of harmless error.


## III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure

2:07-cv-10317-GCS-CEB   Doc # 14   Filed 05/28/09   Pg 33 of 33   Pg ID 1266

to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

s/ Charles E Binder

CHARLES E. BINDER
Dated: May 28, 2009                                                United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System.

Date: May 28, 2009                        By        s/Patricia T. Morris
                                                              Law Clerk to Magistrate Judge Binder