UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARNELL PARHAM,

        Petitioner,

vs.

        Case No. 07-CV-10317
        HON. GEORGE CARAM STEEH

MILLICENT WARREN,
Warden, Thumb Correctional Facility,

        Respondent.

_____/

<u>ORDER ACCEPTING MAY 28, 2009 REPORT AND RECOMMENDATION (#14),
DISMISSING PETITION FOR WRIT OF HABEAS CORPUS, AND
DENYING CERTIFICATE OF APPEALABILITY</u>

      This matter is before the court on Darnell Parham's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a jury trial, Parham was convicted in Michigan's Wayne County Circuit Court on January 12, 2001 of aiding and abetting first-degree murder, M.C.L. § 750.316(1)(a); M.C.L. § 767.39, and possession of a firearm during the commission of a felony, M.C.L. § 750.227b. The charges arose from the fatal shooting of Anthony "Tone" Mercer outside a Detroit club in the early morning hours of August 29, 1999. Parham was sentenced on January 29, 2001 to a life term without parole on the murder conviction, and a mandatory two years on the felony-firearm conviction. Parham's convictions and sentence were affirmed by the Michigan Court of Appeals on August 16, 2002. <u>People v. Parham</u>, No. 233205, 2002 WL 1897654 (Mich. Ct. App. Aug. 16, 2002). The Michigan Supreme Court denied Parham's application for leave to appeal on March 13, 2003 because they were "not persuaded that the questions presented should

be reviewed by this court." People v. Parham, 468 Mich. 874 (Mich. Sup. Ct. Mar. 31 2003). The trial court denied Parham's post-appeal motion for relief from judgment on August 16, 2004. People v. Parham, 00-5802-01 (Wayne Cty. Cir. Ct. Aug. 16, 2004). Parham's delayed application for leave to appeal was denied by the Michigan Court of Appeals on March 16, 2006 pursuant to M.C.R. 6.508(D). People v. Parham, No. 264492 (Mich. Ct. App. Mar. 16, 2006). The Michigan Supreme Court denied leave to appeal on October 31, 2006 pursuant to M.C.R. 6.508(D). People v. Parham, No. 131063 (Mich. Sup. Ct. October 31, 2006).

Parham filed the instant petition for habeas relief on January 19, 2007, raising claims of: (1) denial of due process and a fair trial premised on an erroneous aiding and abetting jury instruction which permitted his conviction as an accomplice based on conduct that occurred after the shooting; (2) denial of the right to a public trial when the trial court expelled the public from the courtroom; (3) denial of due process and a fair trial resulting from the prosecutor's repeated introduction of evidence that witnesses were afraid of testifying; (4) denial of due process and the right to confront witnesses resulting from the introduction of hearsay evidence by the prosecution; (5) denial of due process and equal protection premised on the erroneous aiding and abetting jury instruction which permitted his conviction as an accomplice under a lesser standard of proof than required to convict the principal; (6) denial of effective assistance of trial counsel for failing to object to the erroneous aiding and abetting instruction, failing to object to the prosecutor's introduction of hearsay evidence and evidence that witnesses were afraid of testifying, and failing to investigate and produce exculpatory evidence; and (7) establishing cause and prejudice for failing to present claims alleged in this petition in state court.

On referral from this court, Magistrate Judge Charles Binder issued a May 28, 2009 Report and Recommendation recommending that Parham's petition be dismissed because: (1) Parham's claim of ineffective assistance of counsel premised on counsel's failure to object to the aiding and abetting jury instruction permitting his conviction as an accomplice under a lesser standard of proof than required to convict the principal was not procedurally defaulted; (2) petitioner's remaining claims were procedurally defaulted; (3) petitioner has not demonstrated cause for the procedural defaults, actual prejudice, or a resulting fundamental miscarriage of justice; and (4) alternatively, petitioner's claims are without substantive merit.  Following entry of a June 3, 2009 Order granting an extension of time to file objections, Parham filed timely objections on June 24, 2009.

"A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).  See also Fed. R. Civ. P. 72(b).  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).

### I. Procedural Default

The doctrine of procedural default provides:

> When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review.

Broom v. Mitchell, 441 F.3d 392, 401 (6th Cir. 2006) (quoting Seymour v. Walker, 224 F.3d 542, 549-50 (6th Cir. 2000)).  Consistent with Michigan's valid contemporaneous objection

rule, a Michigan criminal defendant procedurally defaults on habeas claims that were not raised by objection in the state trial court. Ege v. Yukins, 485 F.3d 364, 378 (6th Cir. 2007) (quoting Coleman v. Thompson, 501 U.S. 722, 732 (1991) for the proposition that failing to raise contemporaneous objections in Michigan's trial court "deprive[s] the state courts of an opportunity to address those claims in the first instance.").

A.

Parham objects that the Magistrate Judge failed to consider whether defense Counsel's failure to object to the aiding and abetting instruction at trial was subject to waiver under Michigan law. Parham asserts that the Michigan Court of Appeals cited People v. Carter, 462 Mich. 206, 612 N.W.2d 144 (2000) for invoking a waiver bar, a case which recognized that the Michigan Supreme Court may consider an erroneous jury instruction if the instruction is relevant to an element of the crime or an affirmative defense, despite defense counsel's expressed satisfaction with the instruction at trial. Carter, 462 Mich. at 216 n. 11 (citing People v. Lenkevich, 394 Mich. 117, 229 N.W.2d 298 (1975)). Parham therefore argues that the erroneous aiding and abetting instruction was not subject to waiver under state law.

"In considering a petition for a writ of habeas corpus, 'the federal courts must defer to a state court's interpretation of its own rules of evidence and procedure.'" Allen v. Morris, 845 F.2d 610, 614 (6th Cir. 1988) (quoting Machin v. Wainwright, 758 F.2d 1431, 1433 (11th Cir. 1985)). "The federal habeas court does not act as an additional state appellate court to review a state court's interpretation of its own law or procedure." Allen, 845 F.2d at 614 (quoting Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir. 1987)). The Michigan Court of Appeals found that defense Counsel did not object to the trial court's aiding and abetting

4

instructions, and expressly consented to the instructions, thus "waiv[ing] the issue, extinguishing any possible error." Parham, 2002 WL 1897654 at *1, *2 (citing Carter, 462 Mich. at 215-216). The Magistrate Judge was required to defer to the Michigan Court of Appeals' interpretation of Carter, and the resulting holding under Michigan law that Parham waived the aiding and abetting jury instruction issue by failing to object and consenting to the instruction. Allen, 845 F.2d at 614. Parham's objection is not well taken.

B.

Parham objects that the Magistrate Judge failed to consider whether the waiver rule applied by the Michigan Court of Appeals is firmly established and regularly followed under Michigan law. "A state procedural default is not an 'independent and adequate state ground' barring subsequent federal review unless the state rule was 'firmly established and regularly followed' at the time it was applied." Johnson v. Sherry, No. 2:06-CV-11214, 2008 WL 373435, *5 (E.D. Mich. Feb. 12, 2008) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). The Sixth Circuit has recognized that Michigan's contemporaneous objection rule is an adequate and independent state ground for finding procedural default even where the underlying federal claim is a right to due process. Ege, 485 F.3d at 378. Procedural default has been found where, as here, there was a failure to object at trial and the petitioner, through counsel, consented to the action taken by the trial court. Sherry, 2008 WL 373435, at *7 (holding that public trial claim was procedurally defaulted where, through counsel, the petitioner consented to the closure and the Michigan Court of Appeals deemed the claim waived) (finding procedural default where trial counsel failed to object, and consented, to courtroom closure). The objection is without merit.

C.

5

Parham objects that the Magistrate Judge failed to recognize that the right to a public trial under federal law cannot be procedurally barred from habeas review under state law, citing Taylor v. Illinois, 484 U.S. 400, 417-18 (1988), Waller v. Georgia, 467 U.S. 39, 49-50 (1984), and Hereford v. Warren, 536 F.3d 523, 528 (6th Cir. 2008).

With respect to procedural default of a federal claim:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.  The Taylor Court recognized that "there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client," such as the constitutional right to plead not guilty and proceed to a jury trial, and the right to be present during trial.  Taylor, 484 U.S. at 417-18.  Relying on Waller, a panel of the Sixth Circuit recognized that a "structural defect," such as the denial of the right to a public trial, may warrant automatic reversal if the defect permeated the entire conduct of trial or affected the framework under which the trial proceeded.  Hereford, 536 F.3d at 529 (citing Waller, 467 U.S. at 38).  Taylor, Waller, and Hereford do not displace the procedural default rule announced in Coleman.  Where a state prisoner has defaulted his claim of a federal right to a public trial in state court pursuant to the state's independent contemporaneous objection rule, this precedent bars  federal habeas review of the claim unless the prisoner demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrates that failure to consider the federal claim will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750; Ege,

6

485 F.3d at 378.  See also Sherry, 2008 WL 373435, at *7.  While Parham may rely on Taylor, Waller, or Hereford to demonstrate "cause," "prejudice," or a "fundamental miscarriage of justice" in avoidance of procedural default, these cases do not supplant the procedural default rule.  The objection is without merit.

D.

Parham objects that the Magistrate Judge erroneously relied on the Michigan Supreme Court's October 31, 2006 denial of his application for leave to appeal his post-appeal motion for relief from judgment, under M.C.R. 6.508(D), for procedurally defaulting the federal claims he raised on direct appeal.  Parham argues that he raised the issue of denial of due process and a fair trial premised on the aiding and abetting jury instruction permitting his conviction as an accomplice to be based on conduct that occurred after the shooting, and the issue of the denial of his right to a public trial, only on direct appeal. Parham asserts that, on direct appeal, the Michigan Supreme Court denied his application for leave to appeal on the merits, thus precluding a finding of procedural default by operation of M.C.R. 6.508(D).

If the decision of the last state court to which a habeas petitioner presented his claims did not clearly and expressly rely on an independent and adequate state ground, but instead resolved the claims on their merits, the claims are not procedurally defaulted. Coleman, 501 U.S. at 735.  On direct appeal, the Michigan Court of Appeals found that defense Counsel did not object to the aiding and abetting instructions or the trial court's closing of the courtroom, that defense Counsel assented to the jury instructions and clearing of the courtroom, and therefore Parham waived his constitutional arguments on appeal under Michigan procedural law.  Parham, 2002 WL 1897654 at *1, *2 (citing Carter, 462 Mich. at 215-216).  In denying Parham's application for leave to appeal the decision

7

on March 23, 2003, the Michigan Supreme Court was "not persuaded that the questions presented should be reviewed by this court." Parham, 468 Mich. 874. "If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground." Sherry, 2008 WL 373435, at *6 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Contrary to Parham's objection, the Michigan Supreme Court did not rule on the merits of his federal claims in his direct appeal, but instead relied on the independent and adequate state grounds articulated by the Michigan Court of Appeals in its August 16, 2002 Order. Accordingly, the federal claims related to the aiding and abetting jury instruction and clearing of the courtroom raised in Parham's direct appeal are procedurally defaulted. Coleman, 501 U.S. at 735. To the extent the Magistrate Judge relied on the Michigan Supreme Court's denial of Parham's application for leave to appeal his post-appeal motion for relief from judgment, the error was harmless, and Parham's objection is without merit.

E.

Parham argues that the federal claims he first raised in his post-appeal motion for relief from judgment[1] were not procedurally defaulted when the Michigan Court of Appeals

---

[1] Those claims include: (3) denial of due process and a fair trial resulting from the prosecutor's repeated introduction of evidence that witnesses were afraid of testifying; (4) denial of due process and the right to confront witnesses resulting from the introduction of hearsay evidence by the prosecution; (5) denial of due process and equal protection premised on the erroneous aiding and abetting jury instruction which permitted his conviction as an accomplice under a lesser standard of proof than required to convict the principal; (6) denial of effective assistance of trial counsel for failing to object to the erroneous aiding and abetting instruction, failing to object to the prosecutor's introduction of hearsay evidence and evidence that witnesses were afraid of testifying, and failing to investigate and produce exculpatory evidence.

and Michigan Supreme Court denied his application for leave to appeal pursuant to M.C.R. 6.508(D). The objection is without merit. See Spencer v. Booker, 254 Fed. App'x 520, 524-25 (6th Cir. Nov. 14, 2007) (holding that "Michigan appellate courts' summary statements invoking MCR 6.508(D) made clear that the decision to deny relief rested exclusively on a state procedural rule," rendering federal claims raised below procedurally defaulted).

## II. Cause and Actual Prejudice

A state prisoner may overcome procedurally defaulted federal claims by demonstrating cause for the default and actual prejudice resulting from the alleged violation of federal law. Coleman, 501 U.S. at 750; Ege, 485 F.3d at 378 (quoting Edwards v. Carpenter, 529 U.S. 446, 451 (2000)). To correct a fundamental miscarriage of justice, as "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Murray v. Carrier, 477 U.S. 478, 496 (1986).

Parham objects to the Magistrate's finding that his ineffective assistance of counsel claim did not provide cause for overcoming the procedurally defaulted claims of denial of due process and a fair trial due to the aiding and abetting jury instruction permitting his conviction as an accomplice to be based on conduct that occurred after the shooting, denial of his right to a public trial, and denial of due process and equal protection due to the aiding and abetting jury instruction which permitted his conviction as an accomplice under a lesser standard of proof than is required to convict the principal. Parham argues it is indisputable as a matter of law that ineffective assistance of counsel constitutes "cause" for overcoming any procedurally defaulted claim, citing Edwards, 529 U.S. at 451-52, and Haliym v. Mitchell, 492 F.3rd 680, 691 (6th Cir. 2007).

9

Edwards stands for the proposition that "a procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." Edwards, 529 U.S. at 451. Haliym recognizes that same proposition, that "ineffective assistance of counsel can constitute 'cause,' so long as that ineffective assistance of counsel claim is not itself procedurally defaulted." Haliym, 492 F.3rd at 691 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).

Counsel's ineffectiveness does not always, as Parham implies, constitute "cause" for overcoming a procedural default.

> Although we have not identified with precision exactly what constitutes 'cause' to excuse a procedural default, we have acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice. Carrier, 477 U.S., at 488-89[.] Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution. Ibid. In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is itself an *independent* constitutional claim.

Edwards, 529 U.S. at 451 (underline emphasis added; italics emphasis in original). To prevail on a claim of ineffective assistance of counsel, the petitioner must show that his counsel's performance was deficient and prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel's performance is considered deficient if it was objectively unreasonable under the totality of the circumstances. Id. at 688. "To establish sufficient prejudice to overcome procedural default with an ineffective assistance of counsel claim, a petitioner must show a 'reasonable probability' that, but for counsel's errors, a different result likely would have occurred." Ege, 485 F.3d at 379 (citing Strickland, 466 U.S. at 694). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Ege, 485 F.3d at 379 (quoting Strickland, 466 U.S. at 694).

Parham's objection that defense Counsel's overall performance cannot displace alleged specific deficiencies is not well taken. When analyzing an attorney's performance, "it will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that counsel rendered reasonable professional assistance.'" Combs v. Coyle, 205 F.3d 269, 278 (6th Cir. 2000). "The prejudice prong 'focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.'" Combs, 205 F.3d at 278. The Magistrate Judge did not err by considering defense Counsel's overall performance in actively cross-examining witnesses and zealously arguing to the jury on behalf of Parham. R&R, at 14.

The Magistrate Judge's findings that the aiding and abetting jury instruction was erroneous does not, as Parham argues, render defense Counsel's failure to object to the instruction ineffective assistance of counsel. The Magistrate Judge recognized, correctly, that any error associated with the aiding and abetting jury instruction was subject to a harmless error analysis. California v. Roy, 519 U.S. 2, 5 (1996). Parham's conclusionary assertion that the outcome of his trial would have been different had the jury been properly instructed is not persuasive. As explained by the Magistrate Judge, there was sufficient evidence in the record to permit a reasonable jury to find that Parham, while not the shooter, aided and abetted the shooter, co-defendant Leo Kennedy, *prior to the murder*, by driving the Kennedy to the club and handing him the handgun for the purpose of killing Mercer. Parham has not shown that any error committed by his trial Counsel in failing to object to the aiding and abetting instruction was objectively unreasonable under the totality of the circumstances, or that the failure to object generates a reasonable probability of error

11

sufficient to undermine confidence in Parham's conviction. Strickland, 466 U.S. at 688; Ege, 485 F.3d at 379. Parham's assertion that he is "actually innocent" based on conflicting evidence presented at trial is unpersuasive, and falls short of establishing there has been a fundamental miscarriage of justice. Murray, 477 U.S. at 496.

### III. Merits

#### A.

Parham objects to the Magistrate Judge's finding that the aiding and abetting instruction constituted harmless error under the standard set forth in Roy, 519 U.S. at 5. Parham argues that the proper standard to be applied is whether it is more likely than not that he would have been acquitted "but for" the erroneous instruction. Parham asserts that he prevails under this test because there was only one eyewitness who observed him pass a handgun to Kennedy, the eyewitness offered conflicting testimony, no latent fingerprints were found on the gun, and he, Parham, denied possessing a gun or traveling to the scene with Kennedy intending to shoot Mercer.

The appropriate standard on habeas review, as set forth in Roy, supra, is whether the instructional "error had a substantial and injurious effect or influence in determining the jury's verdict" which leaves this court "in grave doubt as to the harmlessness of the error." Roy, 519 U.S. at 5 (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), and O'Neal v. McAnich, 513 U.S. 432, 437 (1995)). Parham's proffered standard is incorrect as a matter of law. Id. This court is not left with grave doubt about the harmlessness of the instruction and its influence on the jury verdict. The objection is without merit.

#### B.

Parham argues that the Magistrate Judge erred in finding no merit to his claim that he was denied the right to a public trial. Parham argues that the trial court failed to

adequately articulate the factors to be considered in closing a trial.

> In cases where a party seeks to close a criminal proceeding,
>
> the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

Waller, 467 U.S. at 48. "[T]he right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." Id. at 45. The purposes of a public trial are to ensure that the judge and prosecutor responsibly carry out their duties, to encourage witnesses to come forward, and to discourage perjury. Id. at 46.

Early during the first day of trial, on January 9, 2001, the prosecutor complained to the trial judge that people in the audience were laughing out loud and disrupting the proceedings. January 9, 2001 Tr., at 28. The prosecutor commented: "The people in the audience, this is not no show, this is not a movie, this is not to be laughing. If they cannot conduct themselves in a professional manner, they will either have to leave out of the court, or be locked out." Id. Counsel for Parham's co-defendant Leo Kennedy responded: "Judge, I have no problem with that, but I think it should come from the bench. I think it's a little improper, if the Court please." Id. The trial judge warned members of the audience to "behave yourself," and that if they could not control their emotions, sit quietly, and refrain from laughing, snickering, and making comments, they would be removed from the courtroom and could be subject to contempt. Id. No one was removed at that time, and the trial continued. Id.

After a lunch recess, the trial judge informed counsel on the record that he had received two notes, one of which was signed by three jurors. Id. at 133-34. The note read:

13

"While eating lunch, some family or friends of the [co-defendant Kennedy] came in and sat behind us and were talking about the case." Id. at 134. After informing the court that the parties had agreed that the prosecutor and defense counsel would interview the three jurors on the record, the prosecutor continued:

> MS. LINDSEY [Prosecutor]: . . . . Your Honor, and also I've had discussions with both defense counsel, and we are in agreement that we would have no objection to clearing the courtroom except for the immediate family members of the Defendants, friends and other hanger-on's, we would have no objection to having them removed from the courtroom.
>
> MR. SLAMEKA [Defense Counsel for Kennedy]: Judge, just let me say this to you. Obviously, it's a difficult situation for me to respond to, but I would indicate to you this. Because we have two juries in the room, this room is quite small. There's a problem, subtle if you will, in intimidation. I have no problem with that. I notice when I walked out, a couple of jurors sort of ran to the walls real quickly, and that's not the friendly environment that I want in trying a case of this nature.
>
> THE COURT: Mr. Mallette.
>
> MR. MALLETTE [Defense Counsel for Parham]: Well, Judge, I don't have any objection to it. I would just add that it is discretionary with the Court. It's your call.
>
> \* \* \*
>
> THE COURT: Okay. First of all, I don't want anybody leaving because I want the jurors to be able to point out anyone who was sitting by them [at lunch]. So, at this point in time, no one is going to leave. And let me think about how I want to deal with that issue.

Id. at 135-36. Following examination of the three jurors, and their identification of two individuals sitting in the courtroom who had been talking about the case where the jury was eating lunch, the trial court examined the two individuals on the record. Id. at 145-151. Both were friends of witnesses that had testified that day, and both admitted talking about the case where the jurors had eaten lunch. Id. Neither was a relative of the defendants or the victim. Id. After hearing the testimony, the trial judge continued:

14

> THE COURT: . . . . [B]ecause of the problems we have and because we have people here who are down supporting witnesses and don't even seem to have an interest in the case, I'm going to grant the request here to exclude from the courtroom people who are just casual observers. The only ones that can stay are the victims – the family of the victim and the family of the Defendants. If you're not related to the Defendants or the victim, your gonna have to stay out in the hallway. So any person who's not related to either the victim or the Defendant must leave now.

Id. at 152. The trial judge rejected the prosecutor's request that every individual stand and identify his or her relationship to the defendants or the victim. Id. at 152-53.

> THE COURT: No. We're not going to get into – I'm going to accept the representations that these people are relatives. And you know what, if I find out that any of you are not relatives, you're in trouble. That means you violated an order of mine. And you will be going to jail for contempt of court. Because only relatives of the two classes of people that I've identified can be in the courtroom. So if you're willing to take that risk, that's fine. But if I find out that you're lying, you've got serious trouble.

Id. at 153. At the end of the first day of trial, the trial judge gave "one last warning" that, if you can't control yourself and I see this laughing going on, the people I spot, I'm just going to kick out for the rest of the trial." Id. at 220.

The prosecutor, Parham, and co-defendant Kennedy each advanced or consented to legitimate overriding interests that were likely to be prejudiced if the trial judge did not exclude "casual observers" from the courtroom who were not relatives of the victim or the defendants. Those interests included an orderly process, an unbiased jury, and the elimination of jury intimidation. The trial judge demonstrated restraint in limiting the closure to only casual observers who were not relatives of the victim or the defendants. The trial court considered the alternative of questioning every spectator's familial relationship with the victim and defendants, and reasonably declined that alternative at the risk of broadening the group of spectators who actually attended the trial. The trial judge conducted fact finding relative to his juror's concerns, and was able to view first-hand the

15

decorum of those attending trial. The trial judge responded to the concerns expressed by all parties. Nothing in the record suggests that members of the press were subject to the closure order. The narrow closure order was entirely consistent with, and indeed promoted, Parham's right to a fair and orderly trial and an unbiased jury. Parham's assertion that the trial judge failed to articulate its reasons for the partial closure is belied by the record. Consistent with Waller, Parham was not denied the right to a public trial. Parham's objection is without merit.

C.

Parham argues the Magistrate Judge erred on finding that his claim of prosecutorial misconduct, premised on the questioning of witnesses as to whether they were afraid to testify, is without merit. Parham argues the prosecution wrongly attributed these fears to him, without supporting evidence.

Parham fails to direct the court to any record evidence supporting his claim that the prosecutor created the illusion that Parham had committed prior "bad acts" of intimidation. Parham does not dispute the Magistrate Judge's finding that direct evidence was introduced to support witnesses Grier's and Dixon's fears for their own and their families' safety. Parham has not shown that he was denied due process through the questioning of witnesses. Bates v. Bell, 402 F.3d 635, 640-41 (6th Cir. 2005). The objection is without merit.

D.

With respect to his claim that he was denied a right to confront witnesses resulting from the prosecutions' introduction of hearsay evidence, Parham objects that "[t]o the extent that the Magistrate's recommendation is contrary to the law set forth in Petitioner's Brief in Support of his Petition, pg. 36-54, Petitioner relies on and incorporates by reference

16

his argument as set forth therein." Objections, at 14. Parham's objection is without merit as general and conclusionary. See <u>McPherson v. Kelsey</u>, 125 F.3d 989, 995-96 (6th Cir. 1997); <u>Thomas v. Halter</u>, 131 F.Supp.2d 942, 945 (E.D. Mich. 2001).

### IV. Conclusion

On de novo review, Parham's objections are hereby OVERRULED. Accordingly,

IT IS ORDERED that Magistrate Judge Binder's May 28, 2009 Report and Recommendation is hereby ACCEPTED as the findings and conclusions of this court, as further modified herein. Parham's petition for a writ of habeas corpus is hereby DISMISSED.

### Certificate of Appealability

Before petitioner can appeal this court's decision, a certificate of appealability must issue. 28 U.S.C. §2253(c); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). Petitioner has made no such showing. Accordingly, a certificate of appealability is hereby DENIED.

SO ORDERED.

Dated: October 28, 2009

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on October 28, 2009, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---